## MADDEN v. MADDEN.

1. ATTORNEY AND CLIENT—AUTHORITY TO APPEAR FOR CLIENT.

Proof that an attorney had acted for defendant in other matters, that he interviewed and took statements of witnesses in the instant case, that an answer was prepared, and in said attorney's handwriting were suggestions regarding the same, that his appearance was entered on the order-book, and an order for a copy of the petition entered, that the name of the attorney claimed by defendant as representing him did not appear in the records and files

in the case until an answer and cross-bill was filed, when the names of both attorneys were entered, *held*, to sustain a finding that said first attorney represented the defendant rather than that he was employed simply to assist the other.

2. DIVORCE—SETTING ASIDE DECREE—DILIGENCE—DELAY.

A delay of nearly five years after a decree of divorce had been granted against defendant, and after he had sufficient knowledge of the suit to put him on inquiry, his father having procured a transcript of the testimony on the hearing, *held*, to justify the refusal of the court to set aside the decree on the ground of lack of notice to him by his attorneys.

3. ATTORNEY AND CLIENT—CLIENT MAY NOT DENY AUTHORITY OF ATTORNEY OF RECORD.

Plaintiff, having no means of knowing who represented defendant except by the records and files in the case, any secret or private agreement between defendant and his attorneys could have no binding force on plaintiff or her attorneys, and, in the absence of any stipulation or order of substitution, defendant will not be permitted to say that his attorney of record had no authority to represent him.

4. SAME—AUTHORITY OF ATTORNEY TO STIPULATE AMENDMENTS AFFECTING RELIEF.

The attorney for defendant in a divorce suit had ·authority to stipulate that the bill might be amended so as to ask for an absolute divorce rather than for separate maintenance, where the charges in the bill of complaint constituted grounds or cause for an absolute divorce, and, under 3 Comp. Laws 1915, § 11399, it was within the discretion of the court to grant an absolute decree under the original bill of complaint; the stipulation having reference only to the relief to be granted and not to the charges or cause of action.

5. TRIAL—JUDICATURE ACT—NO PROGRESS CLAUSE—CONSTRUCTION.

The provisions of the judicature act (3 Comp. Laws 1915, §§ 12573-12576) which by its terms became effective January 1, 1916, is *held* to be a statute of repose in the nature of a statute of limitations, entitled to a liberal construction, and not to be given a retroactive effect so as to require the dismissal of actions in which no progress had been made since January 1, 1915.

6. SAME—JURISDICTION—MOTION TO DISMISS.

Where defendant by reason of his cross-bill stood in the position of plaintiff, and could have moved to dismiss for lack of progress, but failed to do so, he is in no position to deny the jurisdiction of the court in the case because it was not placed on the "no progress" calendar.

7. DIVORCE—LACHES—EQUITY.

A petition by defendant to set aside a decree of divorce against him and to re-open the case that he might present a meritorious defense does not appeal to the discretion of the court, where it appears that he waited for several years after he knew of the charges that were made against him and of the decree that had been granted against him, and made no move to present said claimed meritorious defense until called upon to respond in money according to the terms of the decree.

Appeal from Hillsdale; Chester (Guy M.), J. Submitted January 18, 1923. (Docket No. 124.) Decided March 23, 1923.

Bill by Mary Madden against William Madden for a divorce: On motion of defendant to set aside a decree for plaintiff, and to have the cause dismissed or reopened and retried. From an order denying the motion, defendant appeals. Affirmed.

*B. D. Chandler* and *W. D. Grommon,* for plaintiff.

*J. Culver Riggs* and *Paul W. Chase,* for defendant.

CLARK, J. From the denial of his motion that a decree for divorce be set aside and the cause dismissed or reopened and retried, defendant has appealed. The trial judge filed an opinion which we adopt:

"Mary Madden, on March 23, 1912, filed her petition for separate maintenance, charging extreme cruelty and adultery. This petition was in form and, as to charges made, a divorce bill, and the prayer was for separate maintenance and for an order to turn over household goods, attorney fees and expense, support

during the pendency of this proceeding, and a prayer for general relief. Subpœna issued March 23, 1912, was served on defendant and filed March 29, 1912. On March 29, 1912, defendant's appearance was entered by Charles A. Shepard as his solicitor, such appearance being entered in the order-book for appearances. On April 20, 1912, defendant filed an answer and cross-bill praying for a divorce, the answer and cross-bill being indorsed, 'F. A. Lyon and C. A. Shepard, solicitors for respondent and cross-complainant.' In due time petitioner filed her answer to the cross-bill. Respondent noticed the case for hearing and filed note of issue for the October, 1912, term of court. Petitioner noticed the case for hearing and filed notes of issue for the terms of court as follows: March term, 1913; May term, 1913; January term, 1915; and May term, 1915. So far as the business of this court is concerned, this case could have been heard at any term of court from the time it was at issue to the time it was heard. The case was on the calendar under the judicature act at the January, March and May terms, 1916. The case was heard in the May term, 1916.

"The case was called with the balance of the chancery calendar each term that it was on the calendar, and by agreement of counsel it was to await the convenience of counsel on both sides for trial. July 28, 1916, a stipulation was entered into by Frankhauser & Cornell, solicitors for complainant, and C. A. Shepard, solicitor for defendant, as follows: That complainant may amend her petition without further or any notice so that she asks for a divorce from the bonds of matrimony and temporary and permanent alimony instead of separate maintenance. That the petition be considered and treated as above set forth in the further progress of said cause by inserting or adding to the prayer for relief already therein, 'And that a decree from the bonds of matrimony be granted her, said complainant, from him, said William Madden, defendant, and that she have such other and further relief. * * * That said petition stand in all things as and for a bill of complaint for divorce, and that said cause may be brought on for hearing * * * without other or further notice at any time after the

15th day of August, 1916.' The stipulation was filed September 9, 1916.

"On September 9, 1916, the case was heard, divorce granted complainant, and an order for the payment of $3 per week from the date of the decree forward and from July 6, 1912, to the date of the decree. November 29, 1921, defendant was brought in on an attachment and ordered to show cause why he should not be adjudged guilty of contempt for nonpayment of alimony.

"Defendant and cross-complainant filed his petition on January 3, 1922, and served notice of a motion that petitioner would move that a certain decree for divorce (the decree in this case) be declared null and void, and for a further order dismissing said cause and for such other and further relief as may appear just and equitable. Upon the argument and in the petition counsel for petitioner, Will Madden, asks that he, cross-complainant, should be allowed to present his evidence in the case if said cause is not dismissed.

"Several grounds are assigned in the petition why this decree should be set aside:

"*First.* That Mr. Shepard had no authority to enter his appearance in the case as solicitor for defendant, and was employed only to assist Mr. Lyon. The proofs show that Mr. Shepard was attorney for Will Madden in other matters, and was acting for him; that he interviewed and took statements of witnesses in this case, that an answer without a cross-bill was prepared to the petition, and in Mr. Shepard's handwriting suggestions are made on the answer regarding the answer. That his appearance was entered in the appearance order-book March 29, 1912, and an order for a copy of the petition was entered. That Mr. Lyon's name does not appear in the records and files of this case until the answer and cross-bill is filed. It is well known to the profession that Mr. Lyon was a close, careful practitioner, and if he had understood that he was to enter his appearance in the cause he would have done so according to the rules and practice of this court. It is apparent from the records and testimony taken on this hearing that Mr. Shepard had authority from Will Madden to appear for him in this cause.

"*Second.* Defendant and cross-complainant claims that he instructed Mr. Lyon that if anything was to be done in the case or if he was needed that he (Lyon) should notify Henry Madden, father of this defendant, and that his father would notify him. Defendant claims he did not receive any notice from Mr. Lyon. Very soon after this decree was granted Henry Madden, the father, knew of it and had a copy of the decree. He also wrote Will and asked him if he knew about his (Will's) wife getting a bill. About a year and a half after the decree, Henry Madden secured a transcript of the testimony taken on the hearing. According to defendant's testimony, he was home a number of times between the date of the decree and this proceeding. It also appears that Will and his father talked about Mary getting her bill soon after the decree was granted. It seems unnatural and against all probabilities that the father and Will did not talk over this decree or the testimony; especially so when it was understood that the father was to notify him. The fact that Mr. Lyon did not notify the father is hardly consistent with silence. Attorneys Mr. Lyon and Mr. Frankhauser are both dead, and we are deprived of their explanation of the circumstances in connection with this case. Plaintiff Mary Madden's main witness is now dead.

"Defendant and cross-complainant, Will Madden, had sufficient information regarding this decree nearly five years ago to have put him upon inquiry. He claims he was here in the city frequently. If so, he could have called on his attorneys and found out what the situation was. A delay of nearly five years, under the circumstances of this case, is an unreasonable delay in asking to set aside this decree. The delay is so long and the lack of diligence so great that the court does not feel justified in setting aside the decree on the grounds of lack of notice to him by his attorneys. Under the circumstances of this case, it seems to me this would be true regardless of the stipulation filed in this case. Even if this had been a so-called 'snap judgment,' and there is no claim that it was, the defendant and cross-complainant should have moved promptly after receiving the information he did. *Hart* v. *Lindsay*, Walk. Ch. 72; *Benedict* v.

*Thompson,* Walk. Ch. 446. Bearing on this question, see *Long* v. *Long,* 59 Mich. 296.

"*Third.* Petitioner herein claims Shepard was not employed by him as his principal attorney. Counsel for Mary Madden had no way of knowing who represented her husband except by the record. Any secret or private agreement between Will Madden and his attorneys or either of them could have no binding force on plaintiff or her solicitors. Mr. Shepard having entered his appearance on March 29, 1912, and there being no order substituting any other attorney or attorneys, counsel for plaintiff had a right and it became their duty to recognize him as the solicitor for defendant and cross-complainant. Mr. Lyon did not enter his appearance in the order-book for defendant as his solicitor, nor was there any stipulation or order of substitution making Frank A. Lyon and Charles A. Shepard solicitors for defendant in the place of Charles A. Shepard. The first time Frank A. Lyon's name appears in this case is the indorsement on the answer and cross-bill of 'Frank A. Lyon and Charles A. Shepard, solicitors for defendant and cross-complainant.' Under the records of this case, defendant and cross-complainant should not now be permitted to say that Mr. Shepard had no authority to represent him and that he was not the attorney of record in this case. Bearing on this question, see *Graham* v. *Elmore,* Har. Ch., 265.

"*Fourth.* Defendant and cross-complainant contends that under the laws governing the relationship of attorney and client, that his attorney exceeded his authority in making the stipulation in this case. The petition in this case was filed under the statute praying for a decree of separate maintenance (3 Comp. Laws 1915, § 11398). The charges in the bill are such as constitute grounds or cause for an absolute divorce. It was within the discretion of the court to grant an absolute decree under the original petition in this case (3 Comp. Laws 1915, § 11399). The charges contained in the petition or the cause of action is not changed by the amendments or stipulation. The amendments stipulated and the stipulation only have reference to the relief to be granted, and not to the charges or cause of action. I think

the attorney had the power to make this stipulation. *Brown* v. *Spiegel*, 156 Mich. 138.

"The fifth proposition presented is that the court had no jurisdiction to proceed in this case because of the 'no progress' provision of the judicature act. The so-called judicature act, being Act No. 314, Pub. Acts 1915, was approved May 18, 1915, and by its own provisions did not go into effect until January 1, 1916. By the provisions of this act, all cases at issue January 1, 1916, or at the time of making up the term calendar, were required to be placed on the term calendar by the clerk of the court without notice of trial or notice of hearing or note of issue being filed (3 Comp. Laws 1915, § 12573).

"Section 12574 provides as follows:

"'All causes in which no action has been taken or progress made for more than one year unless by reason of the business of the court the same shall not have been reached, shall be placed upon said calendar separate and apart from all other causes, under the following heading: "Causes in which no progress has been made for more than one year;" and on the first day of each term, any cause appearing under this heading shall be dismissed by the court for want of prosecution, but without prejudice, at the cost of the party by whom it was brought into court, unless cause be then and there shown to the contrary.'

"Calendars shall be printed and served five days before the first day of term (3 Comp. Laws 1915, § 12576).

"Prior to January 1, 1916, causes at issue were placed on the calendar by filing with the clerk notes of issue. To entitle a case to be and remain on the calendar, there should be served in the cause a notice of trial or hearing. This case was on the January term and May term, 1915, calendar, having been noticed for hearing by the plaintiff's attorneys. This statute went into effect January 1, 1916: Query: When does the one year begin to count, from January 1, 1916, or January 1, 1915? Does it reach back one year from January 1, 1916, the time the act became the law? I am impressed that this is a statute of repose in the nature of a statute of limitations, and should be construed liberally. It should not take

from a suitor rights he has had under the law. To state it differently: If a suitor lost no rights under the law by not making progress in his case in 1915, and during all that year he was well within his rights, that is, up to January 1, 1916, the time this law went into effect, can this statute which went into effect January 1, 1916, penalize him because he did not make progress in 1915 during the time when there was no such law? I am impressed that the legislature did not intend this law to be retroactive.

"It might well be said that noticing the case for hearing and filing notes of issue and placing the cause on the January term and May term calendar, 1915, was progress under the law as it then existed. If such proceedings in May, 1915, were progress, then the cause could not be placed on the 'no progress' calendar for one year after the beginning of the May term in 1915. Nor would the year have expired in time to print it on the 'no progress' calendar of the May, 1916, term of court. It was printed on the live calendar of the May, 1916, term of court, and was heard in that term. Defendant and cross-complainant should not now be permitted to deny jurisdiction in this case because the court had not placed his cause on the 'no progress' calendar, and dismissed it, when he stands in the position of plaintiff in his cross-bill and could have moved in the cause and had the case disposed of by a hearing or by demanding a dismissal of the case under the statute. This he did not do, but stipulated that it be heard. The effect of the contention of the defendant's counsel is that the court failed in its duty because it had not dismissed both plaintiff's petition and defendant's cross-bill. The case was on the live calendar and not on the 'no progress' calendar, and neither complainant nor defendant, who is cross-complainant, moved or took steps to have it brought to the attention of the court and placed on the 'no progress' calendar.

"It is further claimed that the clerk failed in his duty in not placing the cause on the 'no progress' calendar, and that such failure deprived the court of jurisdiction. If defendant and cross-complainant desired to avail himself of the statute in question, he could have moved to have the cause transferred to

the 'no progress' calendar, and not having done so can not now avail himself of such defense. Before January 1, 1916, this cause was noticed for hearing and placed on the calendar five times—four times by the complainant and once by the defendant. The cause was never continued by order of the court, or a showing made by either party, and the court does not see wherein either party can complain of the non-action of the other party.

"*Sixth.* Petitioner herein claims that he has a meritorious defense to this action, and that the decree should be set aside, the case reopened, and he be permitted to defend and present his cause of action. The records show that the defendant and cross-complainant has known since 1912 the charges made against him, and since the latter part of 1916 has known that a decree had been rendered against him, and with all that knowledge has never pressed his meritorious defense until called upon to respond in money according to the terms of the decree. Such circumstances do not present a situation that can or should appeal to the discretion of the court, nor does it present such equities as entitles the relief asked for."

Affirmed, with costs to plaintiff.

WIEST, C. J., and FELLOWS, MCDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.